**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK**

---

JUAN RIVAS,

        Plaintiff,

    -v-                        9:25-CV-00253 (AJB/DJS)

ROBERT KESSLER, *et al.*,

        Defendants.

---

**Hon. Anthony Brindisi, U.S. District Judge:**

**<u>DECISION & ORDER</u>**

Plaintiff Juan Rivas ("Rivas") brings this 42 U.S.C. § 1983 action alleging violations of his Eighth Amendment rights by corrections officers at Marcy Correctional Facility and other New York Department of Corrections and Community Supervision ("DOCCS") officials.

Defendants Joshua Blystone, Dustin Gentile, and Paul Paciello (collectively "defendants"),[1] represented by the Office of the New York State Attorney General, seek pre-discovery summary judgment under Federal Rule of Civil Procedure 56. Dkt. No. 28. They also seek dismissal of Rivas's claims against defendant Dustin Gentile under Rule 12(b)(6). *Id.*

For the reasons set forth below, defendants' motion for pre-discovery summary judgment and defendant Gentile's motion to dismiss will be **DENIED**.

---

[1] Rivas also asserts claims against defendants Jarrad Brown, Anthony Farina, Robert Kessler, Christopher Fenton, Ryan Giordano, James Kingsley, and Sean Redmond. *See* Am. Compl., Dkt. No. 5. Unless otherwise stated, references to "defendants" throughout this opinion are limited to the three represented by the Office of the New York State Attorney General.

## I.    BACKGROUND

Rivas alleges that on September 24, 2024, he was physically and sexually assaulted by Sergeant Gentile and an unknown corrections officer while awaiting transport from Marcy Correctional Facility to the residential mental health unit ("RMHU") at Elmira Correctional Facility. Am. Compl. ¶ 20. Rivas asserts that, upon arriving at Elmira, he reported the assault and asked not to be returned to Marcy because he feared for his safety. *Id.* ¶ 32. According to the complaint, his concerns went unaddressed, and he returned to Marcy about a week later. *Id.* ¶ 33. Upon his return to Marcy, Rivas was placed in a special housing unit ("SHU") cell, without belongings, bedding, or, according to the complaint, "anything else in the room." *Id.* ¶ 34; *see also id.* ("Plaintiff was told he would have to earn those items back.").

On October 4, 2024, Rivas "was first given an opportunity to use the phone since [the alleged assault.]" Am. Compl. ¶ 35. He called his wife ("Ms. Rivas") and informed her of what had happened. *Id.* Rivas's wife filed an Office of Special Investigations ("OSI") complaint on his behalf, alleging that Rivas had been "sexually abused, beaten, and tormented by staff at Marcy" on September 24. *Id.* ¶ 36. Ms. Rivas also emailed a detailed description of the allegations to several DOCCS officials, "including the official OSI Complaint email address, and [] Jason Effman, [DOCCS'] PREA Coordinator." *Id.* ¶ 37.

On October 8, 2024, Rivas met with a staff member from OSI about the Prison Rape Elimination Act ("PREA") complaint. Am. Compl. ¶ 42. Rivas "begged the staff member to have him transferred immediately as he feared . . . serious[] harm[] if he remained at Marcy any longer." *Id.* ¶ 42. When Rivas returned to his cell after, "he discovered that his pencils, toilet paper, and toothpaste had been removed from his cell." *Id.* ¶ 43. At some point that same day, defendant Blystone

allegedly saw Rivas's hand protruding through the cell door slot and "violently kicked" the slot shut, fracturing Rivas's right hand. *Id.* ¶¶ 45, 46.

The next day, October 9, 2024, Rivas alleges that defendants Redmond, Kessler, Giordano, Kingsley, Farina, and Fenton arrived at his cell "and told him they were there to escort him to RMHU at Marcy . . . for suicide watch." Am. Compl. ¶ 50. On the way, the officers led Rivas to a room for frisking. *Id.* ¶ 56. There, Rivas alleges, defendants "falsely claimed that [Rivas] turned[,] struck [] Redmond with his right fist[,]" and "punched [] Giordano in the nose" using the same fractured hand. *Id.* ¶¶ 57–58.

Rivas alleges that the officers then used this pretext to attack him. Am. Compl. ¶¶ 58–60. Rivas further says that Kessler repeatedly kneed him in the torso, causing five rib fractures and a punctured lung, while Farina choked him with some kind of rope. *Id.* ¶¶ 62, 63. As a result, Rivas was taken to the hospital for emergency medical treatment that same day. *Id.* ¶ 66. He was not discharged until two weeks later, on October 23, 2024. *Id.* ¶ 66. Rivas alleges that the October 9 attack was in retaliation for his complaints. *Id.* ¶ 84.

## II.    STANDARD OF REVIEW

### A.    Motion for Summary Judgment

Under Rule 56, summary judgment is proper where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A genuine issue of material fact exists if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *McCutcheon v. Colgate-Palmolive Co.*, 62 F.4th 674, 686 (2d Cir. 2023) (quoting *Nick's Garage, Inc. v. Progressive Cas. Ins. Co.*, 875 F.3d 107, 113 (2d Cir. 2017)).

A fact is "material" if it "might affect the outcome of the suit under the governing law." *Hilton v. Wright*, 928 F. Supp. 2d 530, 544 (N.D.N.Y. 2013) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "In reviewing the motion, the district court must 'draw all reasonable inferences against the party whose motion is under consideration.'" *Lake v. HealthAlliance Hosp. Broadway Campus*, 738 F. Supp. 3d 208, 215 (N.D.N.Y. 2024) (Hurd, J.) (quoting *Williams v. MTA Bus Co.*, 44 F.4th 115, 125 (2d Cir. 2022)). However, "[a] question of material fact does not exist merely because plaintiff disagrees with the deposition testimony and documentary evidence produced by defendant[s]." *Turner v. Delta Airlines, Inc.*, 658 F. Supp. 3d 123, 131 (E.D.N.Y. 2023) (citing *Anderson*, 477 U.S. at 247–48).

**B.      Motion to Dismiss**

"To survive a motion to dismiss, a plaintiff must plead 'enough facts to state a claim to relief that is plausible on its face[.]'" *Principle Homecare, LLC v. McDonald*, 158 F.4th 326, 330 (2d Cir. 2025) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Sanders v. City of Saratoga Springs*, 691 F. Supp. 3d 548, 554 (N.D.N.Y. 2023) (Sannes, C.J.) ("Mere 'labels and conclusions' are insufficient; rather, a plaintiff must provide factual allegations sufficient 'to raise a right to relief above the speculative level.'") (quoting *Twombly*, 550 U.S. at 555). "In considering the legal sufficiency, a court must accept as true all well-pleaded facts in the pleading and draw all reasonable inferences in the pleader's favor." *Bazinett v. Pregis LLC*, 720 F. Supp. 3d 154, 158 (N.D.N.Y. 2024) (citing *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007)) (D'Agostino, J.). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Smith v. Adidas Am., Inc.*, 691 F. Supp. 3d 564, 572–73 (N.D.N.Y. 2023) (Sannes, C.J.) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

### III.    DISCUSSION

As relevant here, Rivas alleges that defendants Blystone, Gentile, and Paciello used excessive force, and that Paciello failed to intervene in that use, therefore violating the Eighth Amendment's prohibition on cruel and unusual punishment.  *See* Am. Compl. ¶¶ 85–95.  Defendants first move for pre-discovery summary judgment.  Defs.' Mot., Dkt. No. 28-11.  They argue that they are entitled to judgment because Rivas failed to exhaust his administrative remedies before filing this action, "as required by 42 U.S.C. § 1997e(a)."  *Id.* at 3.

### A.    Exhaustion of Administrative Remedies

"The Prison Litigation Reform Act, ("PLRA"), 42 U.S.C. § 1997e(a), requires an inmate to exhaust all available administrative remedies prior to bringing a federal civil rights action." *Booker v. Flint*, 2023 WL 3765556, at *2 (N.D.N.Y. Apr. 11, 2023), *report and recommendation adopted*, 2023 WL 3762822 (N.D.N.Y. June 1, 2023) (Suddaby, J.).  "The exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and regardless of the subject matter of the claim."  *Id.* at *2 (citing *Giano v. Goord*, 380 F.3d 670, 675–76 (2d Cir. 2004)).  "Inmates must exhaust their administrative remedies even if they are seeking only money damages that are not available in prison administrative proceedings." *Id.* at *2.

"[T]o properly exhaust an inmate's administrative remedies, the inmate must complete the administrative review process in accordance with the applicable state rules."  *Booker*, 2023 WL 3765556, at *2  (citing *Jones v. Bock*, 549 U.S. 199, 218–19 (2007)).  "'[P]roper' exhaustion means that the inmate must complete the administrative review process in accordance with the applicable procedural rules, including deadlines, as a prerequisite to bringing suit in federal court."  *Id.* at *2 (citing *Woodford v. Ngo*, 548 U.S. 81, 90–103 (2006)).

Courts are not permitted to excuse a prisoner's failure to exhaust because of "special circumstances." *Booker*, 2023 WL 3765556, at *3 (citing *Ross v. Blake*, 578 U.S. 632, 640 (2016)). "Mandatory exhaustion statutes like the PLRA establish mandatory exhaustion regimes, foreclosing judicial discretion." *Id.* at *2 (quoting *Riles v. Buchanan*, 656 F. App'x 577, 580 (2d Cir. 2016)).

Nevertheless, the lack of availability of administrative remedies is a "textual exception to mandatory exhaustion[.]" *See Booker*, 2023 WL 3765556, at *3; *Ross*, 578 U.S. at 642; *Riles*, 656 F. App'x at 580. "An administrative procedure is unavailable when: (1) 'it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates'; (2) it is 'so opaque that i[t] becomes, practically speaking, incapable of use'; or (3) 'prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation.'" *Riles*, 656 F. App'x at 580 (quoting *Ross*, 578 U.S. at 643–44).

Defendants maintain that Rivas never filed a grievance at Marcy or Five Points. Rivas insists that he filed a grievance but he admits DOCCS has no record of any grievance from him. Pl.'s Resp. to Defs.' SOMF, Dkt. No. 49-1 ¶ 26. Rivas explains the absence of any grievance record by contending that administrative remedies were unavailable to him. *See* Pl.'s Resp. at 11–14.

Given the limited record before it and without the benefit of discovery, the Court cannot determine the chronology of events following the alleged September 24, 2024, assault with certainty. But understanding what did or did not happen, and when, is essential for determining whether administrative remedies were available.

6

Defendants seek summary judgment while declining to engage with the factual assertions that bear directly on their exhaustion defense. They "[d]eny knowledge or information as to the truth" of, or otherwise avoid admitting or denying, nearly every factual assertion in Rivas's counterstatement—including those relevant to his claim that administrative remedies were unavailable.[2]

Defendants go further, contending that all of Rivas's factual assertions regarding the unavailability of administrative remedies are "irrelevant as to whether [he] exhausted his administrative remedies." *See, e.g.*, Defs.' Resp. to Pl.'s Counterstatement ¶¶ 4, 11, 18. Put simply, defendants argue that the sole relevant fact here is that Rivas did not exhaust his administrative remedies. Whether they, or others at DOCCS, improperly prevented Rivas from pursuing those administrative remedies is, in their view, immaterial.

The Court does not agree.

"[I]t is well established that '[o]nly in the rarest of cases may summary judgment be granted against a plaintiff who has not been afforded the opportunity to conduct discovery.'" *Hairston v. Newtown*, 2026 WL 993380, at *5 (N.D.N.Y. Mar. 11, 2026) (quoting *Hellstrom v. U.S. Dep't of*

---

[2] *Contrast* Pl.'s Counterstatement, Dkt. No. 49-1 ¶ 4 ("Some time after he was transferred back to Marcy[,] Rivas met with an officer who said she was investigating a PREA complaint[.]"), *with* Defs.' Resp. to Pl.'s Counterstatement, Dkt. No. 50-1 ¶ 4 ("Deny knowledge or information as to the truth of this statement."); *Contrast* Pl.'s Counterstatement ¶ 11 ("On October 8, 2024, Plaintiff met with a staff member from OSI about the complaint regarding his safety at Marcy Correctional Facility."), *with* Defs.' Resp. to Pl.'s Counterstatement ¶ 11 ("Deny knowledge or information as to the truth of this statement."); *Contrast* Pl.'s Counterstatement ¶ 18 ("While at the hospital, Mr. Rivas continued to be denied the ability to grieve by the guards overseeing his custody."), *with* Defs.' Resp. to Pl.'s Counterstatement ¶ 18 ("Deny knowledge or information as to the truth of this statement."); *Contrast* Pl.'s Counterstatement ¶ 20 ("Immediately after discharge, Mr. Rivas was transferred to Five Points, where he made several attempts to grieve the incidents at Marcy"), *with* Defs.' Resp. to Pl.'s Counterstatement ¶ 20 ("Deny knowledge or information as to the truth of this statement."); *Contrast* Pl.'s Counterstatement ¶ 22 ("[Rivas] gave the grievance to the woman pushing the cart for outgoing mail and grievances but saw her put it on top of the cart rather than in the box. He repeated this process on two additional occasions, again receiving no response."), *with* Defs.' Resp. to Pl.'s Counterstatement ¶ 22 ("Deny knowledge or information as to the truth of this statement."); *Contrast* Pl.'s Counterstatement ¶ 13 ("When Mr. Rivas put his hand through the slot in his cell and called out to ask for writing materials, Defendant Blystone kicked the slot closed, crushing Mr. Rivas's right hand, the hand he uses to write, in it."), *with* Defs.' Resp. to Pl.'s Counterstatement ¶ 13 ("This statement . . . is improperly asserted here as Defendant Blystone has not answered the Amended Complaint.").

*Veterans Affs.*, 201 F.3d 94, 97 (2d Cir. 2000) and collecting cases), *report and recommendation adopted,* 2026 WL 990928 (N.D.N.Y. Apr. 13, 2026).

As a result, denial of a pre-answer motion for summary judgment on exhaustion grounds is appropriate where issues remain as to the availability of administrative remedies during the relevant period. *See, e.g., Hardee v. Thomas*, 2025 WL 777268, at *5 (N.D.N.Y. Feb. 13, 2025) (recommending denial of pre-answer motion for summary judgment on the basis of exhaustion where the record was "incomplete as to the availability of administrative remedies" at the correctional facilities where the plaintiff was housed following the subject incident), *report and recommendation adopted*, 2025 WL 773577 (N.D.N.Y. Mar. 11, 2025); *Adams v. Berkman*, 2025 WL 2548797, at *6 (N.D.N.Y. July 11, 2025) (recommending denial of pre-answer motion for summary judgment where the record was "incomplete as to the availability of [p]laintiff's administrative remedies following the alleged . . . incident" and noting there were "certainly issues that call for further factual development"), *report and recommendation adopted*, 2025 WL 2318706 (N.D.N.Y. Aug. 12, 2025).

Resolving all ambiguities and drawing all reasonable inferences in the non-moving party's favor, the Court finds that there are unresolved issues of material fact regarding availability of administrative remedies that preclude summary judgment in defendants' favor on exhaustion grounds. *See Booker*, 2023 WL 3765556, at *4.

## B.    Failure to State a Claim

Defendants also move pursuant to Rule 12(b)(6) to dismiss Rivas's Eighth Amendment claim against Gentile. *See* Notice of Mot., Dkt. No. 28 at 1. Defendants' argument is straightforward: the amended complaint contains only a single allegation concerning Gentile's involvement in the October 9 incident. Specifically, "the single allegation levied against []Gentile regarding

8

the October 9, 2024, incident [i]s in Paragraph 60 of the Amended Complaint," and it is "the first and only" mention of Gentile. Defs.' Mot. at 11; *see also* Am. Compl. ¶ 60 ("The officers, Defendants Kessler, Anzalone, Kingsley, Fenton, Redmond, Giordano, Blystone, Gentile, Farina, and Paciello all began attacking Plaintiff.").

Defendants contend that Rivas "offered no facts as to where Defendant Gentile was nor what he did or did not do, when he arrived at Plaintiff's cell, or any other interactions between them." Defs.' Mot. at 11. "By contrast," they say, Rivas "provided detailed accounts regarding Defendants Redmond, Kessler, Kingsley, Farina, and Fenton's arrival at his cell to escort him to . . . R[MH]U for suicide watch, his interaction with the officers, the arrival of Defendants Blystone and Paciello and [Rivas's] subsequent interactions with them." *Id.* (citing Am. Compl. ¶¶ 50–59). This juxtaposition, in defendants' view, "demonstrates the conclusory nature of the allegations against []Gentile[.]" *Id.* "[A]n assertion that Defendant Gentile 'attacked' Plaintiff is nothing more than 'naked assertions devoid of further factual enhancement.' [*sic*]" *Id.* (quoting[3] *Twombly*, 550 U.S. at 555).

This argument is rejected. Rivas's operative complaint is not required to provide an accounting of Gentile's activities prior to and after the alleged attack on October 9, 2024, nor a blow-by-blow attributing particular acts of force to Gentile. Moreover, Rivas alleges that on a previous occasion on September 24, 2024, Gentile slammed his head into a desk, hit him with a shoe, grabbed his testicles, groped his penis, and possibly "put a finger inside his anus[.]" Am. Compl. ¶¶ 24–27. Plaintiff has also alleged, albeit in far less detailed terms, that Gentile participated in the alleged attack on October 9, 2024. *See id.* ¶ 60. At this stage of the case, Rivas has plausibly

---

[3] Defendants attribute to *Twombly* language that is not in the cited passage and at least one word that appears nowhere in the opinion. The purpose of "(cleaned up)" is to enhance readability. *See Karol v. Old Second Nat'l Bank*, 2020 WL 6343088, at \*1 n.1 (N.D. Ill. Oct. 29, 2020) (citing Jack Metzler, Cleaning Up Quotations, 18 J. App. Prac. & Process 143 (2017)). It is not meant to pass a party's patchwork sentence off as a Supreme Court quote.

9

alleged facts sufficient to sustain his Eighth Amendment claim against Gentile. *See Mims v. Laprey*, 2024 WL 3090481, at *3–7 (D. Conn. June 21, 2024).

### C.    Leave to Amend

Rivas's opposition papers note that he "will seek to file a Second Amended Complaint" pursuant to Rule 15 and offers a "proposed Second Amended Complaint" as an exhibit. Pl.'s Resp. at 1 n.1; *see also* Dkt. No. 49-4. Leave to amend a complaint should be freely given when justice so requires, Fed. R. Civ. P. 15(a)(2), and it is within the district court's sound discretion to grant or deny such leave. *See Shi Ming Chen v. Hunan Manor Enter., Inc.*, 437 F. Supp. 3d 361, 364 (S.D.N.Y. 2020).

However, Rivas's request is not procedurally compliant. Instead, it "is simply tacked onto . . . an opposition brief" and "fails to comply with the Local Rule governing motions for leave to amend pleadings." *Brooks v. City of Utica*, 275 F. Supp. 3d 370, 383 (N.D.N.Y. 2017) (Kahn, J.); *see also* Local Rule 15.1. Rivas has not formally moved for leave to amend. Accordingly, to the extent his request might be understood as a cross-motion for leave to amend, it will be denied without prejudice to renewal in a properly filed motion that complies with Local Rule 15.1.

### IV.    CONCLUSION

Accordingly, it is hereby:

**ORDERED**, that defendant Gentile's motion to dismiss (Dkt. No. 28) is **DENIED**; and it is further

**ORDERED**, that defendants' motion for summary judgment (Dkt. No. 28) is **DENIED**; and it is further

**ORDERED**, that, to the extent Rivas's opposition is construed as a cross motion for leave to amend (Dkt. No. 49), the cross motion is **DENIED** without prejudice.

10

Defendants are directed to file an answer to the amended complaint within 14 days of the date of this Order.

**SO ORDERED.**

Dated: July 10, 2026

Utica, New York

Anthony J. Brindisi
U.S. District Judge